UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**03CR 10348 RGS**

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. |
| v. | VIOLATIONS: |
| (1) JANET GAIBL and | 18 U.S.C. §371 |
| (2) JOSEPH CASSIDY, | (Conspiracy) |
| | 18 U.S.C. §1001 |
| Defendants. | (False Statements) |

**INDICTMENT**

THE GRAND JURY CHARGES THAT:

COUNT ONE

(Conspiracy - 18 U.S.C. §371)

INTRODUCTION

1. At all times material to the allegations contained in this Indictment, Defendants Janet Gaibl ("GAIBL") and Joseph Cassidy ("CASSIDY") were employed by First Realty Management Corporation ("FRM"). Among other things, FRM administers a Housing and Urban Development ("HUD") rent subsidy program, HUD's Section 8 Housing Assistance Payments ("HAP") Program, assisting eligible low and moderate income families to obtain housing.

2. At times material to the allegations contained in this Indictment, FRM managed Cummins Towers, a housing development located in Roslindale, Massachusetts with approximately 180 HUD contracted Section 8 HAP Program rental units. At relevant times, Defendant GAIBL was employed by FRM as management assistant and, later, property manager for Cummins

Towers. Among other things, Defendant GAIBL was responsible for certifying the accuracy of HUD forms 50059, "Owner's Certification and Compliance with HUD's Tenant Eligibility and Tenant Procedures," relative to the Section 8 HAP Program rental units at Cummins Towers. At relevant times, Defendant CASSIDY was employed by FRM as a maintenance supervisor at Cummins Towers.

3.  At all times material to the allegations contained in this Indictment, the Section 8 HAP Program administered at Cummins Towers was funded by the United States through HUD, pursuant to certain guidelines set by HUD. The federal subsidy program required FRM to comply with HUD regulations in administering the Section 8 program, and only tenants whose income fell within income guidelines established by HUD would qualify to receive rent subsidies pursuant to the program.

4.  At times material to the allegations contained in this Indictment, Defendant GAIBL knowingly certified false HUD-50059 forms for certain units at Cummins Towers, including units used by Defendant CASSIDY and his friends and associates when they would not otherwise so qualify, and thereby knowingly and wrongfully obtained subsidized Section 8 housing for persons who would not otherwise qualify for the subsidy at government expense.

## THE CONSPIRACY

5.   Beginning on a date prior to 1988 and continuing to in or about mid 2000, the exact dates being unknown to the Grand Jury, in the District of Massachusetts and elsewhere, Defendants GAIBL and CASSIDY and others, known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, confederate, and agree to commit offenses against the United States, namely, to make materially false statements and to make and use false documents knowing the same to contain materially false and fraudulent statements, in violation of 18 U.S.C. §1001.

## MANNER AND MEANS OF THE CONSPIRACY

6.   It was part of the conspiracy that Defendants GAIBL and CASSIDY identified certain Section 8 apartment units at Cummins Towers for their own use or for the use of Defendant CASSIDY'S friends or acquaintances, and then used Defendant GAIBL'S position as property manager to falsify the requisite forms and paperwork for their own purposes.

7.   It was further part of the conspiracy that Defendants GAIBL and CASSIDY caused materially false statements to be made on HUD forms 50059 for certain units at Cummins Towers, and fabricated supporting documents or caused such documents to be fabricated, for the purpose of obtaining subsidies for individuals who would not otherwise qualify or in the names of individuals who in fact did not exist, thereby enabling

Defendants GAIBL and CASSIDY to use the units for their own purposes.

8.  By means of their conspiracy, Defendants GAIBL and CASSIDY wrongly converted to their own use, or the use of another, subsidy monies paid by the federal government for units at Cummins Towers totaling more than $140,000.00 and also deprived otherwise qualifying families of use of the subject units.

OVERT ACTS

9.  In furtherance of the conspiracy, and to effect its object, the Defendants GAIBL and CASSIDY and their co-conspirators, known and unknown to the Grand Jury, in the District of Massachusetts and elsewhere, committed overt acts including but not limited to the following:

    a.  On or about April 3, 1995, Defendants GAIBL and CASSIDY created and/or used a false document that purported to be a letter, "To Whom it May Concern," from Justin O'Connel, Bursar, Bay State School of Appliances, claiming that Mr. John Duby "presently earns a gross salary of $100.00 per week," when in fact, as Defendant GAIBL knew, Duby's salary at the time was higher than $5,200.00.

    b.  On or about July 24, 1996, Defendants GAIBL and CASSIDY created and/or used a false document that purported to be a letter to Janet Gaibl, from Justin O'Connel, Bursar, Bay State

School of Appliances, claiming that Mr. John Duby "presently earns an annual gross salary of $8,000.00," when in fact, as Defendant GAIBL knew, Duby's salary was higher than $8,000.00.

c.   On or about June 10, 1997, Defendants GAIBL and CASSIDY created and/or used a false document that purported to be a letter to Janet Gaibl from Justin O'Connel, Bursar, Bay State School of Appliances, that claimed that John Duby's "present salary is $8,000.00 yearly," when in fact, as Defendant GAIBL knew, Duby's salary was higher than $8,000.00.

d.   On or about July 7, 1998, Defendants GAIBL and CASSIDY created and/or used a false document that purported to be a letter to Janet Gaibl, from Justin O'Connel, Bursar, Bay State School of Appliances, that claimed that John Duby's " gross annual salary is $8,000.00," when in fact, as Defendant GAIBL knew, Duby's salary was higher than $8,000.00.

e.   On or about June 16, 1999, Defendants GAIBL and CASSIDY created and/or used a false document that purported to be a letter to Janet Gaibl, from Justin O'Connel, Bursar, Bay State School of Appliances, that claimed that John Duby's "gross annual salary is $8,000.00," when in fact, as Defendant GAIBL knew, Duby's salary was higher than $8,000.00.

f.   In or about late 1988, Defendant CASSIDY asked CE to fill out an application for Section 8 residency at Cummins Towers, when in fact Defendant CASSIDY knew that the subject unit

5

would not be used as a residence by CE but instead would be used by Defendant CASSIDY for his own purposes.

    g.    On or about December 19, 1988, Defendant GAIBL signed a false HUD form 50059 for Unit 6K, purportedly for resident CE, when in fact Defendant GAIBL knew that CE did not reside in the unit but rather that the unit was used by Defendant CASSIDY for his own purposes.

    h.    On or about December 29, 1989, Defendant GAIBL signed a false HUD form 50059 for Unit 6K, purportedly for resident CE, when in fact Defendant GAIBL knew that CE did not reside in the unit but rather that the unit was used by Defendant CASSIDY for his own purposes.

    i.    On or about December 28, 1990, Defendant GAIBL signed a false HUD form 50059 for Unit 6K, purportedly for resident CE, when in fact Defendant GAIBL knew that CE did not reside in the unit but rather that the unit was used by Defendant CASSIDY for his own purposes.

    j.    On or about December 27, 1991, Defendant GAIBL signed a false HUD form 50059 for Unit 6K, purportedly for resident CE, when in fact Defendant GAIBL knew that CE did not reside in the unit but rather that the unit was used by Defendant CASSIDY for his own purposes.

    k.    On or about December 16, 1992, Defendant GAIBL signed a false HUD form 50059 for Unit 6K, purportedly for resident CE,

when in fact Defendant GAIBL knew that CE did not reside in the unit but rather that the unit was used by Defendant CASSIDY for his own purposes.

    l.    On or about April 6, 1994, Defendant GAIBL signed a false HUD form 50059 for Unit 6K, purportedly for resident CE, when in fact Defendant GAIBL knew that CE did not reside in the unit but rather that the unit was used by Defendant CASSIDY for his own purposes.

    m.    On or about December 13, 1994, Defendant GAIBL signed a false HUD form 50059 for Unit 6K, purportedly for resident CE, when in fact Defendant GAIBL knew that CE did not reside in the unit but rather that the unit was used by Defendant CASSIDY for his own purposes.

    n.    On or about December 28, 1995, Defendant GAIBL signed a false HUD form 50059 for Unit 6K, purportedly for resident CE, when in fact Defendant GAIBL knew that CE did not reside in the unit but rather that the unit was used by Defendant CASSIDY for his own purposes.

    o.    On or about December 23, 1996, Defendant GAIBL signed a false HUD form 50059 for Unit 6K, purportedly for resident CE, when in fact Defendant GAIBL knew that CE did not reside in the unit but rather that the unit was used by Defendant CASSIDY for his own purposes.

    p.    On or about December 31, 1997, Defendant GAIBL signed

a false HUD form 50059 for Unit 6K, purportedly for resident CE, when in fact Defendant GAIBL knew that CE did not reside in the unit but rather that the unit was used by Defendant CASSIDY for his own purposes.

    q.    On or about January 7, 1999, Defendant GAIBL signed a false HUD form 50059 for Unit 6K, purportedly for resident CE, when in fact Defendant GAIBL knew that CE did not reside in the unit but rather that the unit was used by Defendant CASSIDY for his own purposes.

    r.    On or about December 29, 1999, Defendant GAIBL signed a false HUD form 50059 for Unit 6K, purportedly for resident CE, when in fact Defendant GAIBL knew that CE did not reside in the unit but rather that the unit was used by Defendant CASSIDY for his own purposes.

    s.    During the period 1988 through 2000, Defendant CASSIDY used Unit 6K at Cummins Towers for his own purposes and accepted a rent subsidy for that use.

    t.    On or about October 31, 1991, Defendant GAIBL signed a false HUD form 50059 for a unit at Cummins Towers, 855 American Lgn Hwy, allegedly occupied by "Thomas Buckley," when in fact Defendant GAIBL knew that no such person existed but rather that the unit was used by JO for his own purposes.

    u.    On or about February 1, 1993, Defendant GAIBL signed a false HUD form 50059 for a unit at Cummins Towers, 855 American

Lgn Hwy, allegedly occupied by "Thomas Buckley," when in fact Defendant GAIBL knew that no such person existed but rather that the unit was used by JO for his own purposes.

    v.    On or about October 21, 1993, Defendant GAIBL signed a false HUD form 50059 for a unit at Cummins Towers, 855 American Lgn Hwy, allegedly occupied by "Thomas Buckley," when in fact Defendant GAIBL knew that no such person existed but rather that the unit was used by JO for his own purposes.

    w.    On or about September 29, 1994, Defendant GAIBL signed a false HUD form 50059 for a unit at Cummins Towers, 855 American Lgn Hwy, allegedly occupied by "Thomas Buckley," when in fact Defendant GAIBL knew that no such person existed but rather that the unit was used by JO for his own purposes.

    x.    On or about September 29, 1995, Defendant GAIBL signed a false HUD form 50059 for a unit at Cummins Towers, 855 American Lgn Hwy, allegedly occupied by "Thomas Buckley," when in fact Defendant GAIBL knew that no such person existed but rather that the unit was used by JO for his own purposes.

    y.    On or about March 31, 1998, Defendant GAIBL signed a false HUD form 50059 for a unit at Cummins Towers, 855 American Lgn Hwy, allegedly occupied by "John Smith," when in fact Defendant GAIBL knew that no such person existed but rather that the unit was used by JO for his own purposes.

All in violation of Title 18, United States Code, Section 371.

COUNTS TWO AND THREE
(False Statements - U.S.C. §1001)

10. Paragraphs 1 through 9 are realleged and incorporated by reference as though fully set forth herein.

11. On or about the dates set forth below, in the District of Massachusetts and elsewhere, defendant

JANET GAIBL

did knowingly make materially false, fictitious, and fraudulent statements and representations in connection with documents submitted to the United States Department of Housing and Urban Development for the purpose of fraudulently obtaining Section 8 subsidized housing, as follows:

| COUNT | DATE | FALSE STATEMENT |
|---|---|---|
| 2 | 1/7/99 | Owner's Certification of Compliance with HUD's Tenant Eligibility and Tenant Procedures, HUD-50059, certifying eligibility for CE at Cummins Towers |
| 3 | 12/29/99 | Owner's Certification of Compliance with HUD's Tenant Eligibility and Tenant Procedures, HUD-50059, certifying eligibility for CE at Cummins Towers |

All in violation of Title 18, United States Code, Section 1001.

A TRUE BILL

_____
A Foreperson of the Grand Jury

_____
Lori J. Holik
Assistant U.S. Attorney

DISTRICT OF MASSACHUSETTS

Returned to the District Court by a Foreperson of the Grand Jury and filed on this 19th day of November, 2003.

_____
Deputy Clerk
11-19-03 at 10:55 am

11